## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal Case No. 06-216 (RCL)** |
| | : | |
| **DAMIEN L. LEWIS** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTIONS TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby opposes defendant's motions to suppress physical evidence and statements. The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

### Factual Background

Defendant has been charged in a two-count indictment with one count of Interstate Communications With Intent to Extort, in violation of 18 U.S.C. § 875(b); and one count of Simple Assault in violation of 22 D.C. Code § 404. At a hearing or trial in this matter, government counsel expects the evidence for these charges to demonstrate substantially the following:

Defendant and Marquita Holmes had been in a romantic relationship off and on beginning in July 2005. About a month and a half after they began to date, defendant started to stay at the Manassas, Virginia home shared by Marquita and her parents, Mr. and Mrs. Franklin Holmes.[1] Defendant's stay at the residence ended when he was arrested for a probation violation for felony drug charges in Virginia. After defendant was arrested and held in Virginia, he instructed Marquita

---

[1] Defendant stayed at the Holmes residence for approximately three to four weeks.

to take care of some of his car payments. Additionally, defendant would make frequent collect calls to the Holmes's residence during his incarceration. Defendant then instructed Marquita that he would contribute $1800 to the Holmes household because of both the collect phone calls and other bills that they incurred as a result of him having stayed at their house. Mr. Holmes – though entitled to money from defendant – never asked for money from defendant and in fact attempted to make certain that this was not money that he would owe defendant once he was released from jail. Mr. Holmes was and is employed full-time as a truck driver for a private company in Virginia.

Sometime in June 2006, Marquita and defendant – no longer incarcerated – began to spend a good deal of time at an apartment located at 1500 Eaton Rd. in the Barry Farms housing complex in S.E. Washington, D.C. They stayed at this apartment for approximately two to three weeks, living off money defendant made by selling crack cocaine. At one point in time, Marquita called her father and asked for some money because she was hungry and wanted to buy some cigarettes. Mr. Holmes told his daughter that she could and should come home and that he would take care of her at home – she decided to stay with defendant inside the apartment. On Father's Day, June 18th, 2006, Marquita called her father and wished him a happy Father's Day. She said that she did not feel free to leave Barry Farms because defendant had told her in the past that if she left him, he would harm the father of her four-year-old baby and harm her family.

During this stay at the 1500 Eaton Rd. apartment, defendant became short on money and on or about June 21, 2006, in at least one fit of anger, he punched Marquita in the eye and slapped her hard against her ear, causing it to bleed and causing some hearing damage. Around this time, defendant told Marquita that he was going to prostitute her on the street unless she somehow came up with some money.

-2-

Fearful of defendant and wanting to go home, Marquita again called Mr. Holmes and told him that she could only come home unless he gave defendant the $1800 that defendant was now claiming Mr. Holmes owed him. Mr. Holmes said that he did not owe defendant any money. On Wednesday, June 21, 2006, defendant communicated through Marquita that it would be acceptable if Mr. Holmes only paid $1400 instead of the full $1800 to which he claimed entitlement.

At around 7:00pm on June 21, 2006, defendant himself, using a friend's cell phone, called Mr. Holmes, initiating a series of phone conversations over the course of the evening. During these calls – all of which were placed using a cell phone and all of which were made in Washington, D.C. and placed to Virginia – defendant told Mr. Holmes that he wanted his money and that he wanted "his $1400." Mr. Holmes responded by asking if defendant was holding his daughter hostage. Defendant answered that he would release Marquita when he got the money. Defendant instructed Mr. Holmes to wire him the money to a Western Union in Capital Heights, MD. Mr. Holmes decided not to wire the money because he believed that defendant would just keep both the money and his daughter. A little after 8:00pm on June 21, 2006, defendant called again, and Mr. Holmes attempted to stall defendant by telling him that the Western Union would be closed at that hour. It was at this time that defendant told Mr. Holmes that since he wasn't sending the money, he was going to put Marquita out on the street for prostitution. Additionally, defendant told Mr. Holmes he would send some of his associates over to the Holmes residence in Virginia and have them shoot up the house.

After the calls ended, Mr. Holmes and his wife contacted a family friend who was employed as a detective at the Manassas City Police Department and reported what had happened. The family friend, acting in a civilian capacity, then contacted the Washington Field Office of the Federal

Bureau of Investigations ("FBI").   Responding to the call, the FBI came to the Holmes residence,

learned about defendant's phone calls, threats, and efforts to extort money from Mr. Holmes, and

received a photograph of Marquita from the family and a photograph of defendant from the family

friend.  Soon thereafter, the agents began their surveillance efforts, going to the Barry Farms housing

complex in S.E. Washington D.C. because of information that defendant had been residing there.

On June 22, 2006, at approximately 10:00am, agents with the FBI – in possession of the

photograph of defendant – arrested defendant soon after witnessing him exit an apartment at 1500

Eaton Rd., S.E. in the Barry Farms housing complex.  He was stopped inside a green Lincoln

Continental sedan that had pulled into a gas station located at the corner of Martin Luther King, Jr.

Blvd. and Mellon St., S.E.[2]  It is worth noting that in addition to having probable cause to arrest

defendant for the extortion offense, the agents had further lawful grounds to arrest him because he

was the subject of an outstanding warrant arising from an unrelated criminal matter in Virginia.

Quickly after arresting defendant, the FBI agents found Marquita – with a black eye from defendant's

beating – inside the Eaton Rd. apartment.[3]

After his June 22, 2006 arrest, defendant was placed in custody and taken to the Washington

Field Office of the FBI.  While in custody, he was advised of his rights by two agents and signed an

"Advice of Rights" form.  During a subsequent interview, in response to questions from the agents,

---

[2]  A second male occupant in the vehicle ran from the car when the agents approached.
While chased by an agent, the individual tossed aside a firearm which was later recovered.  He
left in the car by the passenger seat a backpack that contained both marijuana and 10.7 grams and
cocaine. The individual admitted ownership of the drugs, thus absolving defendant of criminal
liability.

[3]  Marquita was initially placed under arrest because the FBI had yet to determine that she
was essentially held against her will by defendant and that she was not in fact an accomplice to
defendant's efforts to extort money from Mr. Holmes.

defendant admitted that he had telephoned Franklin Holmes and demanded money from him while threatening to put Marquita Holmes out on the street unless the money was paid. He also admitted that he told Mr. Holmes that he would not allow Marquita to leave the apartment unless she made enough money after he prostituted her on the streets. Finally, he admitted that he threatened to send his associates with guns to Mr. Holmes's residence.

Finally, the government obtained recordings of defendant's subsequent phone calls from the D.C. Jail in which he admitted to a female friend that he had made the calls to Mr. Holmes, admitted giving Marquita Holmes a black eye, and admitted to having threatened Mr. Holmes that he would prostitute his daughter unless he paid him money.

## Argument

### Tangible Evidence

Defendant has filed a motion to suppress the tangible evidence recovered from the green Lincoln Continental sedan. The government, however, has no intention of introducing at trial in its case-in-chief any physical evidence recovered from inside of that vehicle. Indeed, at present, it is the government's understanding and belief that any contraband recovered from inside of the vehicle belonged to the passenger in the car, not to defendant. The government would of course reserve its right to revisit this issue should defendant somehow place the contraband at issue during the trial.

### Statements

Defendant has also filed a motion to suppress the statements made by defendant during the custodial interview at the FBI's Washington Field Office. In conclusory fashion, defendant claims that (1) the statements were the ultimate product of an improper arrest that lacked probable cause and was thus violative of his Fourth Amendment rights; and that (2) his statements were involuntary

and obtained in violation of his Fifth Amendment rights. Both such claims are without merit and defendant's motion should be denied.

Defendant claims that "[t]he agents did not have probable cause to arrest [him]" (Def. Mot at 2). This claim is groundless. It is undisputed that "[p]robable cause to arrest requires the existence of facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit an offense." United States v. Wesley, 293 F.3d 541, 545 (D.C. Cir. 2002) (quotations and citations omitted). The probable cause standard merely requires the showing of a "fair probability" that a crime has been or is being committed. See Illinois v. Gates, 462 U.S. 213, 246 (1983) ("probable cause does not demand the certainty we associate with formal trials[;] [i]t is enough that there was a fair probability").

Here, the FBI had ample grounds to effect the June 22, 2006 arrest of defendant. Indeed, the agents had detailed information from the Holmes family about (1) defendant having threatened the safety of both Marquita Holmes and her family; and (2) defendant's efforts to extort money from Mr. Franklin Holmes. In corroborating the criminal allegations, the agents met with both members of the Holmes family and with an off-duty law enforcement officer from Manassas, Virginia. In fact, it was this Manassas City Police Department detective who provided the agents with a photograph of defendant so that they could properly conduct surveillance on defendant in the very area in which they believed him to be and the very area in which he was ultimately spotted, trailed, and placed under arrest. Additionally, immediately prior to arresting defendant, the agents observed an individual whose appearance matched that of the suspect depicted in the photograph provided by the family friend of the Holmes family. These facts and circumstances easily supported the notion that

there was "a fair probability" that the agents were arresting an individual who had committed criminal conduct. See Gates, 462 U.S. at 246.

Defendant also claims that the statements obtained at the FBI's Washington Field Office were somehow involuntary and thus violative of his Fifth Amendment rights. See Def.'s Mot. at 2. A statement is voluntary for purpose of due process so long as the statements are "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973) (citing Columbe v. Connecticut, 367 U.S. 568, 602 (1961)). Moreover, for a statement to be involuntary, it must have been caused by government overreaching. Colorado v. Connelly, 479 U.S. 157, 163-64 (1986) ("[a]bsent police conduct casually related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law"); Martin v. United States, 567 A.2d 896, 907 (D.C. 1989) ("[w]ithout a showing of coercive police activity . . . there is not a basis for concluding that [the defendant's] confession was involuntary") (internal quotations omitted).

To determine whether a statement was voluntarily made, this Court must examine the totality of circumstances to determine whether an individual's "will has been overborne and his capacity for self-determination critically impaired." Schneckloth, 412 U.S. at 225. Factors considered in determining voluntariness include the circumstances surrounding the questioning; the defendant's age, education, and prior experience with the law; his physical and mental condition at the time the statement was made; factors showing coercion or trickery; and the delay between suspect's arrest and confession. Turner, 761 A.2d at 854; See, e.g., Bliss v. United States, 445 A.2d 625, 631-32 (D.C. 1982) (defendant was in pain from gunshot wound, had little food or sleep, but it was a flesh wound, there was little blood, and he was able to answer questions), cert. denied, 459 U.S. 1117 (1983);

Harris v. Dugger, 874 F.2d 756, 759-62 (11th Cir.) (confession voluntary even though defendant in forearm cast and handcuffed during six-hour interrogation), cert. denied, 110 S. Ct. 573 (1989); United States v. Leon Guerrero, 847 F.2d 1363 (9th Cir. 1988) (promises that cooperation would be communicated prosecutors insufficient to overcome will); United States v. Yunis, 273 U.S. App. D.C. 290, 298, 859 F.2d 953, 961 (1988) (defendant's seasickness, his uncomfortably hot room, and his unfamiliarity with American legal culture not a legally adequate basis for concluding that confession was involuntary); United States v. Pelton, 835 F.2d 1067 (4th Cir. 1987) (FBI agent's assertion that would launch full-scale investigation if defendant did not cooperate not sufficient to render statements involuntary), cert. denied, 486 U.S. 1010 (1988).

In his motion, defendant makes the bare assertion that his statement was involuntary.  Here, though defendant was in custody, he made a knowing and voluntary waiver of his Miranda rights. Indeed, at 12:55pm, he signed an "Advice of Rights" form that was subsequently memorialized in an FD-395 document, and thus knowingly and intelligently waiving the rights provided to him by Miranda v. Arizona, 384 U.S. 436 (1966).  Additionally, defendant fails to proffer any facts tending to show that his will was overborne or that his capacity for self-determination was critically impaired.  The defendant is a twenty-two-year-old adult with no apparent learning disabilities and with prior experience with the law.  There is no evidence that the defendant was intoxicated or under the influence of drugs at the time of his statement.  Based on the facts and circumstances surrounding defendant's statement, there is no basis upon which to conclude that his statement was the product of police overreaching.  Therefore, defendant's motion should be denied on this ground as well.

WHEREFORE, the government respectfully requests that defendant's motions to suppress statements and tangible evidence be denied.

Respectfully submitted,

JEFFERY A. TAYLOR
D.C. BAR NO. 498610
UNITED STATES ATTORNEY

_____

Alexander P. Shawe
Assistant United States Attorney
Federal Major Crimes Section,
D.C. Bar No. 472492
555 4th Street, N.W.  #4239
Washington, DC 20001
Phone: 514-9519; Fax: 353-9414

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by mail upon the attorney for the defendant, Ms. Mary Petras, Esq., 625 Indiana Ave., N.W., Suite 550, Washington, D.C. 20004, this 6th day of October, 2006.

_____

Alexander P. Shawe
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal Case No. 06-216 (RCL)** |
| | : | |
| **DAMIEN L. LEWIS** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## ORDER

Upon consideration of the Defendant's Motion to Suppress Tangible Evidence and

Motion to Suppress Statement, the Government's Opposition thereto, and

the record herein, it is this _____ day of _____, 2006, hereby

ORDERED, that the Defendant's Motions be Denied.


_____
UNITED STATES DISTRICT JUDGE


copies to:

Alexander P. Shawe
Assistant U.S. Attorney
Federal Major Crimes Section
555 4th Street, N.W.
Washington, D.C. 20001

Mary Petras, Esq.
625 Indiana Ave., N.W.
Suite 550
Washington, D.C. 20004