UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,       : | |
| :  | |
| v.                              : | |
| :                               | Case No. 06-216 (RCL) |
| DAMIEN J. LEWIS                 : | |
| :                               | |
| Defendant.                      : | |
| _____ : | |

**GOVERNMENT'S MOTION IN LIMINE SEEKING ADMISSION OF
EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby moves in limine for admission of certain evidence pursuant to Federal Rule of Evidence 404(b). The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

1. Defendant has been charged in a two-count indictment with one count of Interstate Communications With Intent to Extort, in violation of 18 U.S.C. § 875(b); and one count of Simple Assault in violation of 22 D.C. Code § 404.

2. Defendant and Marquita Holmes had been in a romantic relationship off and on beginning in July 2005. About a month and a half after they began to date, defendant started to stay at the Manassas, Virginia home shared by Marquita and her parents, Mr. and Mrs. Franklin Holmes.[1] Defendant's stay at the residence ended when he was arrested for a probation violation for felony drug charges in Virginia. After defendant was arrested and held in Virginia, he instructed Marquita to take care of some of his car payments. Additionally, defendant would make frequent collect calls

---

[1] Defendant stayed at the Holmes residence for approximately three to four weeks.

to the Holmes's residence during his incarceration. Defendant then instructed Marquita that he would contribute $1800 to the Holmes household because of both the collect phone calls and other bills that they incurred as a result of him having stayed at their house. Mr. Holmes – though entitled to money from defendant – never asked for money from defendant and in fact attempted to make certain that this was not money that he would owe defendant once he was released from jail. Mr. Holmes was and is employed full-time as a truck driver for a private company in Virginia.

Sometime in June 2006, Marquita and defendant – no longer incarcerated – began to spend a good deal of time at an apartment located at 1500 Eaton Rd. in the Barry Farms housing complex in S.E. Washington, D.C. They stayed at this apartment for approximately two to three weeks, living off money defendant made by selling crack cocaine. At one point in time, Marquita called her father and asked for some money because she was hungry and wanted to buy some cigarettes. Mr. Holmes told his daughter that she could and should come home and that he would take care of her at home. On Father's Day, June 18th, 2006, Marquita called her father and wished him a happy Father's Day. She said that she did not feel free to leave Barry Farms because defendant had told her in the past that if she left him, he would harm the father of her four-year-old baby and harm her family.

During this stay at the 1500 Eaton Rd. apartment, defendant became short on money and on or about June 21, 2006, in at least one fit of anger, he punched Marquita in the eye and slapped her hard against her ear, causing it to bleed and causing some hearing damage. Around this time, defendant told Marquita that he was going to prostitute her on the street unless she somehow came up with some money.

Fearful of defendant and wanting to go home, Marquita again called Mr. Holmes and told him that she could only come home unless he gave defendant the $1800 that defendant was now

claiming Mr. Holmes owed him. Mr. Holmes said that he did not owe defendant any money. On Wednesday, June 21, 2006, defendant communicated through Marquita that it would be acceptable if Mr. Holmes only paid $1400 instead of the full $1800 to which he claimed entitlement.

At around 7:00pm on June 21, 2006, defendant himself, using a friend's cell phone, called Mr. Holmes, initiating a series of phone conversations over the course of the evening. During these calls – all of which were placed using a cell phone and all of which were made in Washington, D.C. and placed to Virginia – defendant told Mr. Holmes that he wanted his money and that he wanted "his $1400." Mr. Holmes responded by asking if defendant was holding his daughter hostage. Defendant answered that he would release Marquita when he got the money. Defendant instructed Mr. Holmes to wire him the money to a Western Union in Capital Heights, MD. Mr. Holmes decided not to wire the money because he believed that defendant would just keep both the money and his daughter. A little after 8:00pm on June 21, 2006, defendant called again, and Mr. Holmes attempted to stall defendant by telling him that the Western Union would be closed at that hour. It was at this time that defendant told Mr. Holmes that since he wasn't sending the money, he was going to put Marquita out on the street for prostitution. Additionally, defendant told Mr. Holmes he would send some of his associates over to the Holmes residence in Virginia and have them shoot up the house.

After the calls ended, Mr. Holmes and his wife contacted a family friend who was employed as a detective at the Manassas City Police Department and reported what had happened. The family friend, acting in a civilian capacity, then contacted the Washington Field Office of the Federal Bureau of Investigations ("FBI"). Responding to the call, the FBI came to the Holmes residence, learned about defendant's phone calls, threats, and efforts to extort money from Mr. Holmes, and

received a photograph of Marquita from the family and a photograph of defendant from the family friend. Soon thereafter, the agents began their surveillance efforts, going to the Barry Farms housing complex in S.E. Washington D.C. because of information that defendant had been residing there.

On June 22, 2006, at approximately 10:00am, agents with the FBI – in possession of the photograph of defendant – arrested defendant soon after witnessing him exit an apartment at 1500 Eaton Rd., S.E. in the Barry Farms housing complex. He was stopped inside a green Lincoln Continental sedan that had pulled into a gas station located at the corner of Martin Luther King, Jr. Blvd. and Mellon St., S.E.[2] It is worth noting that in addition to having probable cause to arrest defendant for the extortion offense, the agents had further lawful grounds to arrest him because he was the subject of an outstanding warrant arising from an unrelated criminal matter in Virginia. Quickly after arresting defendant, the FBI agents found Marquita – with a black eye from defendant's beating – inside the Eaton Rd. apartment.[3]

### OTHER CRIMES AND BAD ACTS BY THE DEFENDANT

#### Prior Abusive Conduct

The government seeks to introduce the facts and circumstances surrounding defendant's previous abusive conduct and threatening behavior towards Marquita Holmes. The admissible prior conduct centers around the following matters:

---

[2] A second male occupant in the vehicle ran from the car when the agents approached. While chased by an agent, the individual tossed aside a firearm which was later recovered. He left in the car by the passenger seat a backpack that contained both marijuana and cocaine. The individual admitted ownership of the drugs, thus absolving defendant of criminal liability.

[3] Marquita was initially placed under arrest because the FBI had yet to determine that she was essentially held against her will by defendant and that she was not in fact an accomplice to defendant's efforts to extort money from Mr. Holmes.

(1) On or about October 31, 2005, defendant severely beat Marquita because he learned that when he was incarcerated, she had been seeing an ex-boyfriend.[4]

(2) Sometime in April 2006, defendant again beat Marquita. This beating took place in Fairfax, VA and ended when Marquita managed to lock defendant outside on a porch before she ran outside in a ripped t-shirt and got in the car of a neighbor who happened to be driving by.[5] Marquita reported this beating to the police and returned to her parents' house in Manassas where she informed them of what had happened. Additionally, the day before a May 11, 2006 court date concerning the April 2006 beating, defendant picked up Marquita with her understanding that he would be taking them to court the following day. But once he took her to his mother's house in Prince George's County, MD, defendant decided both not to attend court and refused to drive Marquita to court.

**Analysis**

Federal Rule of Evidence 404(b) is "'a specialized rule of relevancy.'" United States v. Moore, 732 F.2d 983, 987 (D.C. Cir. 1984) (quoting 2 J. Weinstein & M. Berger, Weinstein's Evidence 404-49). Specifically, Rule 404(b) places only a single restriction on the introduction of evidence of a person's bad acts: such evidence is inadmissible to prove "the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b); see also United States v. Clarke, 24 F.3d 257, 264 (D.C. Cir. 1994) ("As this court has stated previously, '[o]nly one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime

---

[4] During the attack, defendant punched Marquita in the head several times and choked her with two hands, leaving handprints on her neck and knots on her head.

[5] During this beating, defendant ripped out some of Marquita's hair.

probably has a defect in character; a man with such a defect in character is more likely than men generally to have committed the act in question.'") (quoting Moore, 732 F.2d at 987 n.30); United States v. Rogers, 918 F.2d 207, 209 (D.C. Cir. 1990).  Thus, "other crimes" evidence is admissible under Rule 404(b) so long as it is relevant in any way other than by using the prohibited inference of bad conduct from bad character.  See, e.g., United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir.) ("[U]nder Rule 404(b), any purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character.") (emphasis in original), cert. denied, 498 U.S. 825 (1990).  The Court of Appeals has reaffirmed the position that Rule 404(b) is a rule of inclusion rather than of exclusion when it stated in United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998)(en banc): "[while] the first sentence of Rule 404(b) is "framed restrictively," the rule itself "is quite permissive," prohibiting the admission of other crimes evidence "in but one circumstance" – for the purpose of proving that a person's actions conformed to his character.  United States v. Jenkins, 928 F.2d 1175 (D.C. Cir. 1991).

After this Court determines that evidence "is relevant to a material issue other than character," and thus satisfies the Rule 404(b) inquiry, the Court must proceed to determine whether the probative value of the evidence is nevertheless "substantially outweighed" by the danger of unfair prejudice, in violation of Rule 403.  United States v. Mitchell, 49 F.3d 769, 775 (D.C. Cir.), cert. denied, 516 U.S. 926 (1995). As its language reflects, however, Rule 403 "tilts, as do the rules as a whole, toward the admission of evidence in close cases" – even when other crimes evidence is involved.  Moore, 732 F.2d at 989; see also Huddleston v. United States, 485 U.S. 681, 688-689 (1988) ("Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such

evidence."); <u>United States v. Manner</u>, 887 F.2d 317, 322 (D.C. Cir. 1989), <u>cert. denied</u>, 493 U.S. 1062 (1990). The Court of Appeals has consistently reiterated that evidence must be excluded under Rule 403 only if its probative value is substantially outweighed by the danger of unfair prejudice. <u>See</u>, e.g., <u>Clarke</u>, 24 F.3d at 266; <u>Moore</u>, 732 F.2d at 989; <u>United States v. Day</u>, 591 F.2d 861, 878 (D.C. Cir. 1978).

     A trial court's determination that evidence is admissible under Rule 404(b) is reviewable for abuse of discretion. <u>See</u> <u>United States v. Watson</u>, 894 F.2d 1345, 1349 (D.C. Cir. 1990); <u>United States v. Moore</u>, 732 F.2d at 992 (trial courts have "wide discretion" in applying Rule 404(b)). A trial court's determination that evidence is admissible under Rule 403 is reviewed with "great deference," and will be reversed only in the event of a "grave abuse of discretion." <u>United States v. Johnson</u>, 970 F.2d 907, 912 (D.C. Cir. 1992) (internal quotation omitted). In reviewing a trial court's decision under Rule 403, the Court of Appeals will "give the evidence [at issue] its maximum reasonable probative force and its minimum reasonable prejudicial value." <u>United States v. McDowell</u>, 762 F.2d 1072, 1076 (D.C. Cir. 1985) (internal quotation omitted).

     Finally, any potential prejudice flowing from admitting this evidence can be cured by the Court giving an appropriate jury instruction. "[I]t is the law, pure and simple, that jury instructions can sufficiently protect a defendant's interest in being free from undue prejudice." <u>United States v. Perholtz</u>, 842 F.2d 343, 361 (D.C. Cir.), <u>cert. denied</u>, 488 U.S. 821 (1988) (citation omitted). <u>Accord</u> <u>Zafiro v. United States</u>, 506 U.S. 534, 540-41.

     Here, in this case, defendant's prior assaultive and threatening conduct towards Marquita Holmes – about which Mr. Franklin Holmes was informed – would serve not as improper evidence of defendant's bad character. Instead, it would permissibly provide a jury or finder of fact with a

context within which to evaluate defendant's relationship with Marquita Holmes and her family. See, e.g., United States v. Dansker, 537 F.2d 40, 58 (3d Cir.1976) (previous crimes evidence admissible when it casts light on relationship between key government witness and defendants), cert. denied, 429 U.S. 1038 (1977).[6]

Alternatively, the evidence of the previous beatings would tend to prove defendant's intent to extort through threats the $1400 from Mr. Holmes. It would tend to show that defendant's phone calls constituted more than a mere heated exchange between him and Marquita's family. Evidence of defendant's previous beatings of Mr. Holmes's daughter would be relevant at trial to help show that defendant had the requisite intent to exploit any parental fear or concern on the part of Mr. Holmes for his own monetary gain. For either basis discussed above, the proffered evidence is properly admissible at trial.

---

[6] The government acknowledges and calls to the Court's attention to the fact that the Dansker matter involved facts quite different from those at issue in the instant matter. Indeed, the criminal conduct charged in that case involved a multi-defendant conspiracy to violate the Travel Act of the 18 U.S.C. §1952 – not violent threats aimed at the father of a young woman involved with a violent and abusive defendant.

WHEREFORE, the government respectfully requests that it be permitted to introduce the above-referenced Rule 404(b) evidence at trial.

Respectfully submitted,

JEFFERY A. TAYLOR
D.C. BAR NO. 498610
UNITED STATES ATTORNEY

_____
Alexander P. Shawe
Assistant United States Attorney
Federal Major Crimes Section,
D.C. Bar No. 472492
555 4th Street, N.W.  #4239
Washington, DC 20001
Phone: 514-9519; Fax: 353-9414

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by mail upon the attorney for the defendant, Ms. Mary Petras, Esq., 625 Indiana Ave., N.W., Suite 550, Washington, D.C. 20004, this 6th day of October, 2006.

_____
Alexander P. Shawe
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 06-216 (RCL) |
| | : | |
| DAMIEN L. LEWIS | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER

Upon consideration of the Government's Motion in Limine Seeking Admission of Evidence Pursuant to F.R.C.P. 404(b), any Opposition thereto, and the record herein, it is this _____ day of _____, 2006, hereby

ORDERED, that the Government's Motion be Granted..

_____
UNITED STATES DISTRICT JUDGE

copies to:

Alexander P. Shawe
Assistant U.S. Attorney
Federal Major Crimes Section
555 4th Street, N.W.
Washington, D.C. 20001

Mary Petras, Esq.
625 Indiana Ave., N.W.
Suite 550
Washington, D.C. 20004