**FILED**
JAN 12 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | Criminal Case No. 06-216 (RCL) |
| DAMIEN L. LEWIS : | |
| Defendant. : | |

*Let this be filed.*
*Royce C. Lamberth*
*U.S.D.J. 1/12/07*

### STATEMENT OF OFFENSE

The parties in this case, the United States of America and the defendant, Damien Lewis, stipulate and agree that had this matter proceeded to trial, the Government was prepared to prove beyond a reasonable doubt the facts set forth below. These facts do not constitute all of the facts known to the parties concerning the charged offenses; they are being submitted to demonstrate that there exists probable cause that the defendant committed the offense to which he is pleading guilty.

1    Defendant Damien Lewis began dating Marquita Holmes, the daughter of the victim, Franklin Holmes, in or around July 2005. At various times during the relationship, defendant and Ms. Holmes lived together, and, for a several-week period in 2005, defendant stayed with Ms. Holmes at her parents at their residence in Manassas, Virginia.

2.    Sometime in June 2006, Ms. Holmes, while staying with defendant in an apartment located in the Barry Farms housing complex in the District, at D.C., called her father Franklin Holmes and asked for money for food and cigarettes. Franklin Holmes refused to give Ms. Holmes money but instead beseeched his daughter to come home.

3.    On Father's Day, June 18, 2006, Ms. Holmes again called her father and requested money from him. He again said no and asked her to come home. At that time she told her father

that she did not feel free to leave the apartment because defendant had once told her that if she left, he would harm either the father of her four-year old child or her own family.

4. On or about June 21, 2006, Ms. Holmes called her father and told him that she would come home if he gave defendant $1,800 that defendant claimed Mr. Holmes owed him. Mr. Holmes denied owing defendant any money and refused to pay the money. At approximately 7:00 p.m. that same evening, Marquita Holmes and defendant himself, while still staying at the S.E., apartment, placed several calls to Mr. Holmes at his home in Manassas, Virginia. During the first of these phone calls, defendant told Mr. Holmes that he wanted his "money." Mr. Holmes repeatedly responded that he did not owe defendant any money. At one point, defendant advised that he would accept $1,400 from Mr. Holmes. Mr. Holmes again said no. At one point, defendant instructed Mr. Holmes to wire him the money to a Western Union location in Capitol Heights, Maryland. Despite his great concern for his daughter, however, Mr. Holmes continued to refuse to pay any money to defendant.

5. Shortly after 8:00 p.m. on June 21, 2006, defendant again placed a call from the apartment where he was staying in Southeast Washington, D.C., to Mr. Holmes in Manassas, Virginia. During the conversation, defendant again demanded $1,400 from Mr. Holmes. After Mr. Holmes again refused to pay defendant any money, defendant told Mr. Holmes that he was going to put Ms. Holmes out on the street for prostitution. In addition, defendant stated that if the money was not paid to him, he would send some of his "soldiers" to Mr. Holmes residence in Virginia and have them "shoot up" his house. As a result of these communications, Mr. Holmes reasonably believed defendant's threat that he would harm either Marquita Holmes or Mr. Holmes himself, or both. Nevertheless, Mr. Holmes did not pay defendant any money.

6. Instead, after the phone calls finally ended, Mr. Holmes and his wife contacted a family friend who was employed as a detective at the Manassas City Police Department and reported what had happened. The family friend then contacted the Federal Bureau of Investigations' ("FBI") and advised what had happened. A special agent from the FBI's Washington Field Office responded to the Holmes residence and interviewed the victim, Mr. Holmes. Shortly thereafter, FBI agents, with photographs of defendant and Ms. Holmes in hand, went to the apartment located at Road, S.E., and set up surveillance outside the residence. The following morning, June 22, 2006, defendant and another individual were observed leaving the residence and entering a vehicle. Agents followed the vehicle until it came to a stop at a gas station in Southeast, Washington, D.C., then placed defendant under arrest after he got out of the vehicle and had begun pumping gas.

7. On or about June 29, 2006, a recording of a telephone call between defendant and an unknown woman was obtained from the D.C. Jail. During the phone call, defendant admitted to the friend that he had made several phone calls to Mr. Holmes and to having threatened Mr. Holmes that he would force Marquita Holmes into prostitution unless Mr. Holmes paid him some money, and he admitted to having given Marquita Holmes a black eye.

_____
DONNELL W. TURNER
Assistant United States Attorney

_____
MARY PETRAS, Esquire
Attorney for Defendant

_____
DAMIEN LEWIS
Defendant

1/11/07
Date

1·12·07
Date